UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIGIO CORTEZ MENDEZ,<br>Plaintiff,<br>v.<br>JEREMY CASEY, Facility Administrator at the Imperial Regional Detention Facility; et al.,<br>Defendants. | Case No.: 26-cv-4651-BJC-DEB<br>**ORDER GRANTING HABEAS PETITION UNDER 28 U.S.C. § 2241**<br>**[ECF No. 1]** |

Before the Court is Petitioner Eligio Cortez Mendez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Petitioner initiated this action on August 14, 2026. *Id.* Respondents filed a response on September 2, 2026, and Petitioner filed a traverse on September 8, 2026. ECF Nos. 5–6. For the reasons set forth below, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a native and citizen of Venezuela, entered the United States on May 10, 2023. ECF No. 1 ¶ 2. Petitioner was detained upon entry but was released on his own recognizance on May 17, 2023. *Id.* The order of release contains several conditions with which Petitioner was required to comply so he could remain released. *Id.* ¶ 22. Petitioner was required to report for any hearing or interview as directed by Department of Homeland

Security ("DHS") and the Executive Office for Immigration Review ("EOIR"). *Id.* He was instructed to report to the Duty Deportation Officer on June 20, 2023. *Id.* He was told not to change his place of residence without first securing permission from the immigration officer. *Id.* And he was instructed not to violate any laws or commit any crimes while on the order of release. *Id.* There are no allegations that Petitioner violated any of these conditions. *Id.*

On May 3, 2024, Petitioner was granted Temporary Protected Status until April 2025. *Id.* ¶¶ 2, 23. On February 20, 2025, Petitioner applied for asylum, withholding of removal, or protection under the Convention Against Torture because he fears persecution by the Venezuelan government and associated groups if he returns to Venezuela. *Id.* ¶ 3. Petitioner was granted an employment authorization document ("EAD"), valid from August 19, 2025, through August 18, 2030. *Id.* ¶ 4. Since his release, Petitioner has reported to DHS as directed, and he has no criminal history. *Id.* ¶¶ 4, 27.

ICE officers arrested Petitioner on July 14, 2026. *Id.* ¶ 5. At that time, Petitioner was living with his wife and son in Florida and was working as an Uber Eats driver. *Id.* ¶¶ 5, 27. The officers did not provide Petitioner with prior notice that DHS was revoking his release, nor did DHS provide Petitioner an opportunity to contest whether his re-detention was warranted. *Id.* ¶ 6. The officers took Petitioner into custody in Florida, and about two weeks later, they transferred him to the Imperial Regional Detention Facility, where he remains today. *Id.*

Respondents state that Petitioner is subject to detention under 8 U.S.C. § 1226(a). ECF No. 5 at 2. As such, he is "able to request a bond hearing before an immigration judge." *Id.* Respondents argue that a bond hearing was scheduled for September 16, 2026, and therefore the Petition should be denied as moot. *Id.*; *see also* ECF No. 8. Petitioner argues that he is entitled to release because the government violated his due process rights by revoking his parole without notice or an opportunity to be heard. ECF No. 6 at 2.

On November 12, 2026, the Court issued an Order requiring the parties to provide the Court with an update regarding the outcome of the September 16 bond hearing. ECF

No. 7. The parties filed a joint status report notifying the Court that the request for a bond hearing was withdrawn at the request of Petitioner's immigration counsel. ECF No. 8.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

### A. Mootness and Exhaustion

Respondents contend that Petitioner is detained under 8 U.S.C. § 1226(a) and is only entitled to a bond hearing—rendering his other constitutional claims moot. ECF No. 5 at 2–3. Respondents also argue the Petition should be denied on exhaustion grounds. *Id.* The Court disagrees.

"The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *S. Or. Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1134 (9th Cir. 2004). "That burden is always 'heavy,' as a case is not moot where any effective relief may be granted[.]" *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)); *Castaneda v. Lyons*, No. 1:26-cv-01866-JLT-SAB-HC, 2026 WL 1623336, at *2 (E.D. Cal. June 5, 2026). "The mere fact that a bond hearing *can be* scheduled is insufficient to carry Respondents' heavy burden to establish that the Petition is moot at this time." *Perez v. Blanche*, No. 3:26-CV-05725-LEK-JLB, 2026 WL 3182369, at *3 (S.D. Cal. Oct. 22, 2026).

Here, although the bond hearing was requested and scheduled, the request was subsequently withdrawn. ECF No. 7. Thus, no bond hearing was held, and no bond hearing is currently scheduled. *Id.* Accordingly, the Court finds that Respondents fail to meet their burden in establishing that the Petition is moot.

As to exhaustion:

> While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

*Miguel Pedro v. Mullin*, Case No. 5:26-cv-04303-MBK, 2026 WL 2677303, at *4 (C.D. Cal. Sept. 11, 2026).

Here, the record indicates that Petitioner has not yet received a bond hearing. *See* ECF No. 8. While Respondents correctly note that Petitioner previously sought a Section 1226(a) bond hearing before an immigration judge, *see id.*, this Court concludes that such administrative remedies would be inadequate and futile. *See Cardenas v. Giles*, Case No. 8:26-cv-02322-ACCV, 2026 WL 2722730, at *2 (C.D. Cal. Sept. 14, 2026) (concluding that administrative remedies would be inadequate and futile because "a post-deprivation bond hearing would not address the propriety of Petitioner's claim that [she] was not afforded constitutionally adequate procedural safeguards prior to the deprivation of h[er] liberty interest") (alterations in original) (citation omitted); *Zhou v. Janec[k]a*, Case No.

5:26-cv-04167-DTB, 2026 WL 2365550, at *4 n.4 (C.D. Cal. Aug. 14, 2026) ("Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer.") (citing *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013)). Therefore, this Court waives any prudential exhaustion requirement as to Petitioner's due process claims. Respondents' request to deny the Petition on exhaustion and mootness grounds is denied.

**B. Due Process**

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause of the Fifth Amendment. ECF No. 1 ¶¶ 53–64. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (citation omitted). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents do not contest that Petitioner "passed through [the] gates" on May 10, 2023. ECF No. 1 at ¶ 2; *see generally* ECF No. 5. Upon arrival, Petitioner was determined to not be a danger to the community or a flight risk and was released on parole. *Id.*

Petitioner applied for and received a Florida Driver's license, has work authorization, has lived and worked in the community for over three years, was previously granted Temporary Protected Status, and has applied for asylum. *Id.* ¶¶ 2–4, 27. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for his family and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. ECF No. 1 ¶ 30. DHS initially determined that Petitioner should be paroled because he posed no danger to the community and was not a flight risk. ECF No. 1 ¶ 2. There is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise been in criminal trouble, and has authorization to work in the United States. ECF No. 1 ¶¶ 4, 5, 25. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.*

Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any change in material circumstances that would warrant reconsideration of Petitioner's parole. *See generally* ECF No. 5. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 1035, 1047 (E.D. Cal. 2025)).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1037; *Matute*, 807 F. Supp. 3d at

1129, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 5.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-cv-2396-JES-MMP, 2025 WL 2770629, at *4–5 (S.D. Cal. Sept. 26, 2025) (granting a petition for writ of habeas corpus on due process grounds and releasing petitioner from custody subject to the conditions of her preexisting parole); *Velasquez v. Noem*, No. 26-cv-0746-BJC-MMP, 2026 WL 1005077, at *3 (S.D. Cal. Apr. 14, 2026) (same). The Petition is **GRANTED** and immediate release in the appropriate remedy.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus. ECF No. 1. Accordingly, the Court **ORDERS** as follows:

1. Respondents must immediately release Petitioner from custody, subject to the same terms and conditions on which he was previously released in May 2023.

2. Respondents are **ENJOINED AND RESTRAINED** from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show materially changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. *See Maria S.M. v. Chestnut*, No. 26-CV-03777-TLN-AC, 2026 WL 1480390, at *4.

3. As this concludes the litigation in this case, the Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Honorable Benjamin J. Cheeks
United States District Judge